IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 04–cv–01009–EWN–MEH


MARIAN J. BARCIKOWSKI,

      Plaintiff,

v.

SUN MICROSYSTEMS, INC., a Delaware corporation,

      Defendant.

---

## ORDER AND MEMORANDUM OF DECISION

---

This is an employment discrimination case.  Plaintiff Marian Barcikowski alleges that by terminating his employment, his former employer, Defendant Sun Microsystems, Inc. discriminated against him on the basis of his age, religion, and disability in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C.A. § 621 *et seq.* (2005), Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.A. § 2000e *et seq.* (2005), and the Americans with Disability Act ("ADA"), 42 U.S.C.A. §§ 12101–12213 (2005), and interfered with and retaliated against Plaintiff's exercise of his rights provided under the Family and Medical Leave Act ("FMLA"), 29 U.S.C.A. § 2601 *et seq.* (2005).  In addition, Plaintiff seeks liquidated damages and punitive damages on his claims.  This matter is before the court on "Sun Microsystems Inc.'s Motion for Summary Judgment," filed March 23, 2005.  Jurisdiction is premised upon federal question, 28 U.S.C.A. §§ 1331, 1343 (2005).

**FACTS**

*1.      Factual Background*

Plaintiff, a male of Catholic faith born August 21, 1954, worked for Defendant from approximately January 28, 1998 through February 12, 2002.  (Compl. ¶¶ 3, 13.)  Defendant is a publicly held company that creates, produces, and sells computer hardware and software.  (Sun Microsystems Inc.'s Mot. for Summ. J., Sun Microsystems Inc.'s Br. in Supp. of Mot. for Summ. J., Statement of Undisputed Material Facts ¶¶ 1, 4 [filed Mar. 23, 2005] [hereinafter "Def.'s Br."]; *admitted at* Pl.'s Br. in Opp. to Def.'s Mot. for Summ. J., Resp. to Statement of Undisputed Material Facts ¶¶ 1, 4 [filed June 3, 2005] [hereinafter "Pl.'s Resp."].)  Defendant also provides its customers with classes and instructional materials relating to its products through its Sun Educational Services ("SES") business unit.  (*Id.*, Statement of Undisputed Material Facts ¶ 2; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 2.)  SES is a part of Defendant's Sun Enterprise Services business unit.  (*Id.*, Statement of Undisputed Material Facts ¶ 2; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 2.)  Plaintiff worked for Defendant as SES Americas Controller, and reported to Brenda Osborne, SES Controller.  (*Id.*, Statement of Undisputed Material Facts ¶¶ 5, 7; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶¶ 5, 7.)  Brenda Osborne reported to Mick Murray, vice president of Sun Enterprise Services, who in turn reported to Defendant's chief financial officer. (*Id.*, Statement of Undisputed Material Facts ¶ 5; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 5.)

As SES Americas Controller, Plaintiff was responsible for accurately analyzing and reporting the financial results of Defendant's SES Americas business unit for incorporation into

Defendant's publicly issued financial statements.  (*Id.*, Statement of Undisputed Material Facts ¶ 7; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 7.)  In August 2001, Robyn Denholm replaced Murray as vice president of Sun Enterprise Services.  (*Id.*, Statement of Undisputed Material Facts ¶ 8, Ex. A–3 at 19 [Dep. of Robyn Denholm]; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 8.)  Similarly to Plaintiff, Denholm is of Catholic faith.  (*Id.*, Statement of Undisputed Material Facts ¶ 11, Ex. A–1 at 100 [Dep. of Marian Barcikowski], Ex. A–3 at 9 [Dep. of Robyn Denholm]; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 11.)

  *a.*  ***September 10, 2001 Balance Sheet Review***

  On or about September 10, 2001, Denholm held a meeting in order to review the balance sheets and financial statements of the business units for which she was responsible.  (*Id.*, Statement of Undisputed Material Facts ¶¶ 9, 10, Ex. A–3 at 30–32 [Dep. of Robyn Denholm], Ex. A–4 at 50 [Dep. of Jeffrey Powley]; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶¶ 9, 10.)  Plaintiff was not present at the balance sheet review meeting.  (*Id.*, Statement of Undisputed Material Facts ¶ 10, Ex. A–4 at 57 [Dep. of Jeffrey Powley]; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 10.)  At the time Denholm conducted the balance sheet review meeting, she had not yet met Plaintiff and did not know Plaintiff's age, Plaintiff's religious persuasion, or whether Plaintiff was disabled or regarded as disabled.  (*Id.*, Statement of Undisputed Material Facts ¶ 11, Ex. A–1 at 69–70 [Dep. of Marian Barcikowski]; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 11.)

During the course of the balance sheet review meeting, Denholm learned that SES Americas's financial statements, for which Plaintiff was responsible, reflected several million dollars of accrued revenues and liabilities. (*Id.*, Statement of Undisputed Material Facts ¶ 12, Ex. A–3 at 30–32, 36 [Dep. of Robyn Denholm]; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 12.) "Accrued" revenues and liabilities are amounts of monies reflected on Defendant's financial statements as revenues and liabilities, but which have not yet been received or paid by Defendant. (*Id.*, Statement of Undisputed Material Facts ¶ 13; *admitted in relevant part at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 13.) Accrued revenues and liabilities must be documented and well-substantiated in order to appear on Defendant's financial statements. (*Id.*) Denholm requested more information regarding the accrued revenues and liabilities. (*Id.*, Statement of Undisputed Material Facts ¶ 14, Ex. A–3 at 32, 39–41, 53–57 [Dep. of Robyn Denholm]; *deemed admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 14; Reply Br. of Def. Sun Microsystems, Inc., in Supp. of mot. for Summ. J., Ex. A–17 at 44–47 [Dep. of Robyn Denholm], Ex. A–18 [Dep. of Jeffrey Powley at 50–52, 55 [Dep. of Jeffrey Powley] [filed July 26, 2005] [hereinafter "Def.'s Reply"].) Denholm ultimately opined that insufficient documentation existed to support the accrued revenues and liabilities for which Plaintiff was responsible. (Def.'s Br., Statement of Undisputed Material Facts ¶ 15, Ex. A–3 at 53–57 [Dep. of Robyn Denholm]; *deemed admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 15, Ex. B at 142–44 [Dep. of Carl Douglas Brasier].)

### b.    *Plaintiff's Medical Leave*

On September 25, 2001, Plaintiff experienced symptoms of dizziness and fatigue and sought medical treatment.  (*Id.*, Statement of Undisputed Material Facts ¶ 16; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 16.)  Medical professionals diagnosed Plaintiff as suffering from stress, anxiety, and hypertenstion and give him anxiety and hypertension medications.  (*Id.*, Ex. A–8 [Dep. of Michael Schneider, P.A.].)  Plaintiff requested, and Defendant granted, permission to take a leave of absence from his employment from September 25, 2001 through January 2, 2002.  (*Id.*, Statement of Undisputed Material Facts ¶ 17; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 17.)

Within a few weeks of the commencement of his leave of absence, Plaintiff's symptoms abated.  (*Id.*, Statement of Undisputed Material Facts ¶ 26; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 26.)  On December 20, 2001, Plaintiff's therapist released Plaintiff to return to work on January 2, 2002.  (*Id.*)  Plaintiff's therapist limited Plaintiff to working forty hours per week, and opined that Plaintiff was capable of performing the functions of his job on a forty-hour per week basis.  (*Id.*, Ex. A–10 at 25 [Dep. of Joel McFarland].)  Plaintiff returned to work for Defendant on January 2, 2002.  (*Id.*, Statement of Undisputed Material Facts ¶ 31; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 31.)  As of February 1, 2002, Plaintiff's therapist's notes reflect that Plaintiff believed he had met his goals in therapy and his treatment was complete.  (*Id.*, Statement of Undisputed Material Facts ¶ 30; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 30.)  Plaintiff's therapist terminated the case, and Plaintiff never consulted his therapist again.  (*Id.*)

### c.    *Investigation into Plaintiff's Accruals*

During Plaintiff's absence, Doug Brasier filled in for Plaintiff. (*Id.*, Ex. A–9 at 87–88 [Dep. of Carl Douglas Brasier]; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 15.)  Denholm asked Brasier and the employees who reported to Plaintiff to investigate the accrued revenues and liabilities that Plaintiff had listed on the SES financial statements. (*Id.*, Statement of Undisputed Material Facts ¶ 19; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 19.)  Denholm also met with Plaintiff regarding the accruals. (*Id.*, Statement of Undisputed Material Facts ¶ 21, Ex. A–3 at 119–20 [Dep. of Robyn Denholm]; *deemed admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 21.)  Denholm summarized the results of her investigation in a memorandum, which she sent to Mike Lehman, Defendant's chief financial officer. (*Id.*, Statement of Undisputed Material Facts ¶ 24; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 24.)  Denholm informed Lehman that the investigation had led her to conclude that Plaintiff had demonstrated "gross misjudgment/misconduct," and Denholm had reversed the accruals. (*Id.*, Statement of Undisputed Material Facts ¶ 24, Ex. A–7 [10/22/01 E-mail]; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 24.)  Lehman subsequently requested that Defendant's internal audit department perform another investigation. (*Id.*, Statement of Undisputed Material Facts ¶ 25; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 25.) Defendant's internal audit department's investigation began after Plaintiff returned from his leave of absence. (*Id.*)

Defendant asserts that it assigned Paul Wear, an auditor in Defendant's internal audit department to investigate Plaintiff's revenue and liability accruals. (*Id.*, Statement of Undisputed

Material Facts ¶ 32; *admitted in relevant part at* Pl.'s Resp., Resp. to Statement of Undisputed

Material Facts ¶ 32.)  Plaintiff underscores that Wear conducted an investigation, not an audit.

(Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 32.)  During the course of his

investigation, Wear reviewed documentation relating to the accruals at issue and interviewed

Plaintiff, Osborne, Brasier, two SES Americas executives, and several employees who reported to

Plaintiff during the time Plaintiff booked the accruals.  (Def.'s Br., Statement of Undisputed

Material Facts ¶¶ 33–35; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material

Facts ¶¶ 33–35.)  As a result of his investigation, Wear concluded that Plaintiff had not adequately

performed his fiduciary responsibilities, and had exercised poor judgment regarding the accruals.

(*Id.*, Statement of Undisputed Material Facts ¶ 36, Ex. A–6  at 35–36 [Dep. of Paul Wear];

*admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 36.)  More

specifically, Wear found that:

> [the] [r]evenue accruals were made based on unreliable, and incorrect information.
> Accrual entries that should have been reversed automatically were not.  Independent
> review of supporting documentation prior to booking the journal [sic] was not performed
> which is a violation of a fundamental internal control process whereby no one individual
> has complete control over a transaction permitting errors to go undetected.  [Wear] found
> no evidence that [Plaintiff] gained personally from the error.  [Wear] do[es] see that there
> was a lack of attention to detail and a failure of a manager to properly execute their [sic]
> fiduciary responsibility.

(*Id.*, Ex. A–12 [1/16/02 Accrued Revenue Investigation Notes]; Pl.'s Resp., Ex. U [1/16/02

Accrued Revenue Investigation Notes].)  Wear conveyed his beliefs that Plaintiff had not

adequately fulfilled his fiduciary duties to Denholm and Lori Walker, a human resources

representative for Defendant.  (Def.'s Br., Statement of Undisputed Material Facts ¶ 38; *admitted

at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 38.)

### d.   *Termination of Plaintiff's Employment*

Based on her own investigation and Wear's investigation, Denholm concluded that Plaintiff had failed to carry out his job responsibilities and the accruals Plaintiff booked were inaccurate and unsupported.  (*Id.*, Statement of Undisputed Material Facts ¶ 38; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 38.)  Denholm therefore concluded that Plaintiff's employment should be terminated.  (*Id.*, Statement of Undisputed Material Facts ¶ 39; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 39.)

On January 29, 2002, Denholm and Walker met with Plaintiff to inform him that his employment would be terminated effective February 12, 2002.  (*Id.*, Statement of Undisputed Material Facts ¶ 40; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 40.)  During the meeting, Plaintiff requested another opportunity to provide Denholm with information regarding the accruals at issue, and an explanation therefor.  (*Id.*, Statement of Undisputed Material Facts ¶ 41; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 41.)  On February 11, 2002, Denholm and Mike Hampton, another of Defendant's employees, met with Plaintiff and gave him an opportunity to present information regarding the accruals.  (*Id.*, Statement of Undisputed Material Facts ¶¶ 42, 43; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶¶ 42, 43.)  At the end of the meeting, Denholm concluded that Plaintiff had failed: (1) to substantiate adequately the accruals in question, and (2) to explain how he calculated the accruals and why the he booked the accruals on the SES Americas financial statements.  (*Id.*, Statement of Undisputed Material Facts ¶ 43; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 43.)  Consequently, Denholm notified Plaintiff that her decision to terminate his employment stood.  (*Id.*, Statement of

Undisputed Material Facts ¶ 44; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed

Material Facts ¶ 44.)

Because of the approximately thirteen and one-half million dollars in accrued revenues and

two million dollars in accrued liabilities Plaintiff caused to be reflected on SES Americas's

financial statements for the fiscal year 2001, Defendant had to restate the 2001 financial

statements.  (*Id.*, Statement of Undisputed Material Facts ¶ 45; *admitted at* Pl.'s Resp., Resp. to

Statement of Undisputed Material Facts ¶ 45.)  The restatement of SES Americas's 2001 financial

statements to account for the accruals at issue reflected a reduction in SES Americas's revenues

of twelve million two hundred thousand dollars.  (*Id.*, Statement of Undisputed Material Facts ¶

46; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 46.)  Due to the

restatement of SES Americas's 2001 financials statements, certain of Defendant's executive

employees who were compensated based in part upon SES revenue amounts were required to

refund to Defendant several thousand dollars that they had received as incentive compensation in

2001.  (*Id.*, Statement of Undisputed Material Facts ¶ 47; *admitted at* Pl.'s Resp., Resp. to

Statement of Undisputed Material Facts ¶ 47.)

## 2. *Procedural History*

On or about September 30, 2002, Plaintiff filed a charge of age and religious

discrimination with the Equal Employment Opportunity Commission ("EEOC"), in satisfaction of

the requirements under the ADEA and Title VII.  (Compl. ¶ 11.)  On or about November 2, 2002,

Plaintiff amended his charge with the EEOC to include disability discrimination, in satisfaction of

the requirements under the ADA.  (*Id.*)  On or about July 1, 2003, the EEOC issued Plaintiff a

Dismissal and Notice of rights.  (*Id.* ¶ 12.)  Plaintiff timely filed a complaint in Broomfield County

District Court.

On October 20, 2003, the Broomfield District Court ordered Plaintiff to complete and file

service of process.  (Order [Case No. 03cv0223] [filed Dec. 8, 2003].)  Plaintiff failed to comply

with the court's order.  (*Id.*)  On December 8, 2003, the Broomfield District Court dismissed

Plaintiff's case for failure to prosecute.  (*Id.*)  On December 12, 2003, Plaintiff moved the court to

vacate its order of dismissal.  (Pl.'s Mot. to Vacate Order of Dismissal [filed Dec. 12, 2003].)  On

April 5, 2004, the Broomfield District Court vacated its order of dismissal.  (Order [filed April 5,

2004].)  On May 17, 2004, pursuant to 28 U.S.C. §§ 1331, 1343, and 1441, Defendant removed

this action to this court, due to this court's original jurisdiction premised upon federal question.

(Notice of Removal of Action [filed May 17, 2004].)  On May 24, 2004, Defendant filed a motion

for extension of time to answer Plaintiff's complaint — the first of myriad motions for extension

of time in this case.[1]  (Unopposed Mot. for Extension of Time to Respond to Compl. [filed May

25, 2004].)  On May 25, 2004, Magistrate Judge O. Edward Schlatter granted Defendant's

---

[1]In addition to the motion to extend time for an answer, Defendant filed two unopposed motions to extension of the dispositive motions deadline, and Plaintiff and Defendant each filed three undisputed motions for extension of the briefing dates for both the response and reply briefs, totaling nine motions in all.  (Unopposed Mot. for Brief Extension of the Dispositive Mot. Deadline [filed Feb. 17, 2005]; Unopposed Second Mot. for Brief Extension of the Dispositive Mot. Deadline [filed March 14, 2005]; Pl.'s Unopposed Mot. for Extension of Time To File Br. in Opp. to Sun Microsystems Inc.'s Mot. for Summ. J. [filed Apr. 12, 2005]; Pl.'s Second Unopposed Mot. for Extension of Time To File Br. in Opp. to Sun Microsystems Inc.'s Mot. for Summ. J. [filed May 12, 2005]; Pl.'s Third Unopposed Mot. for Extension of Time To File Br. in Opp. to Sun Microsystems Inc.'s Mot. for Summ. J. [filed May 27, 2005]; Unopposed Mot. for Extension of Time to File Reply Br. [filed June 21, 2005]; Unopposed Second Mot. for Extension of Time to File Reply Br. [filed July 1, 2005]; Unopposed Third Mot. for Extension of Time to File Reply Br. [filed July 19, 2005].)

motion and set a due date of May 31, 2004 for Defendant's answer.  On June 1, 2004, Defendant

filed an answer to Plaintiff's complaint.  (Answer [filed June 1, 2004].)

On March 23, 2005,  Defendant filed a motion for summary judgment.  (Def.'s Br.)

Defendant argues that Plaintiff cannot maintain his claims because Plaintiff: (1) cannot establish

the requisite *prima facie* cases for disability discrimination and retaliation under the FMLA, and

(2) cannot demonstrate that its legitimate, nondiscriminatory reasons for terminating Plaintiff were

pretextual with respect to all of Plaintiff's claims.  (Def.'s Br. at 13–19.)  On June 3, 2005,

Plaintiff filed a response to Plaintiff's motion.  (Pl.'s Resp.)  On July 26, 2005, Defendant filed a

reply to its motion.  (Def.'s Reply.)  This matter is fully briefed.

## ANALYSIS

### 1.    Standard of Review

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may

grant summary judgment where "the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(c) (2005); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986);

*Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).  The

moving party bears the initial burden of showing an absence of evidence to support the

nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "Once the moving

party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue

for trial on a material matter."  *Concrete Works*, 36 F.3d at 1518 (citing *Celotex*, 477 U.S. at

325).  The nonmoving party may not rest solely on the allegations in the pleadings, but must

instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e) (2005).  A fact in dispute is "material" if it might affect the outcome of the suit under the governing law; the dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997) (citing *Anderson*, 477 U.S. at 248).  The court may consider only admissible evidence when ruling on a summary judgment motion.  *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).  The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment.  *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998) (citing *Concrete Works*, 36 F.3d at 1517).

**2.     *Evaluation of Claims***

**a.     *Plaintiff's First Claim: Age Discrimination Under the ADEA***

Defendant argues that it is entitled to summary judgment on Plaintiff's claim for age discrimination under the ADEA.  (Def.'s Br. at 16–19.)  The ADEA provides that it is unlawful for an employer to take adverse employment action against an employee based on the employee's age.  *See* 29 U.S.C.A. § 623(a)(1) (2005); *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998).  Plaintiff alleges that Defendant discriminated against him because of his age by terminating his employment.  (Compl. ¶ 20.)  Defendant asserts that Plaintiff cannot maintain his claim because he cannot establish that Defendant's legitimate, nondiscriminatory reason for discharging Plaintiff was pretextual.  (Def.'s Br. at 16–19.)

Plaintiff may establish Defendant's violation of the ADEA either directly, by presenting sufficient evidence that age was a determining factor in Defendant's decision to fire him, or

indirectly, through the framework of shifting evidentiary burdens outlined by the Supreme Court

in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Garrett v. Hewlett Packard

Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002).  Here, Plaintiff has proffered no direct evidence of

Defendant's discrimination, and thus must follow the *McDonnell Douglas* framework.  As a

threshold matter under *McDonnell Douglas*, Plaintiff must establish a *prima facie* case of

discrimination.  *McCowan v. All Star Maint., Inc.*, 273 F.3d 917, 922 (10th Cir. 2001).  The

"burden of establishing a *prima facie* case" is "not onerous."  *Id.*  (citation and internal quotation

marks omitted).  "Establishment of a *prima facie* case creates a presumption of unlawful

discrimination."  *Tex. Dep't of Cmty Affairs v. Burdine*, 450 U.S. 248, 254–55 (1981).  If Plaintiff

establishes a *prima facie* case, the burden of production then shifts to Defendant to "articulate a

legitimate, nondiscriminatory reason for the adverse employment action."  *Wells v. Colo. Dept. of

Transp.*, 325 F.3d 1205, 1212 (10th Cir. 2003) (citing *McDonnell Douglas*, 411 U.S. at 792).  If

Defendant articulates a proper basis for its actions, the burden shifts back to Plaintiff to

demonstrate that the reason advanced by Defendant is a pretext for discrimination.  *Burdine*, 450

U.S. at 255–56.

        **i.**    ***Prima Facie Case***

      To establish a *prima facie* case for age discrimination, the plaintiff must show: "(1) that

plaintiff belongs to a protected class; (2) that he suffered an adverse employment action; and (3)

that the adverse employment action occurred under circumstances giving rise to an inference of

discrimination."  *Hysten v. Burlington N. & Santa Fe R.R.*, 296 F.3d 1177, 1181 (10th Cir. 2002).

In an age discrimination case, a court's inquiry is "whether a plaintiff has shown actions taken by

the employer from which one can infer, if such actions remain unexplained, that it is more likely

than not that such actions were based on a discriminatory criterion illegal under the [ADEA]." *Id.* (internal quotation marks omitted).  Here, because Defendant does not argue to the contrary and this issue can be resolved at subsequent *McDonnell Douglas* stages, I assume, *arguendo*, that Plaintiff can establish a *prima facie* case for age discrimination.

### ii.    *Legitimate Nondiscriminatory Reason*

Once a plaintiff makes a *prima facie* showing, the defendant "must articulate a legitimate, nondiscriminatory reason for the adverse employment action."  *Wells*, 325 F.3d at 1212; *see McDonnell Douglas*, 411 U.S. at 804–05.  "The defendant does not at this stage of the proceedings need to litigate the merits of the reasoning, nor does it need to prove that the reason relied upon was bona fide, nor does it need to prove that the reasoning was applied in a nondiscriminatory fashion."  *Ingels v. Thiokol Corp.*, 42 F.3d 616, 621 (10th Cir. 1994) (citation and internal quotation marks omitted).  Nonetheless, the defendant's explanation of its legitimate reasons must be clear and reasonably specific.  *Drake v. Ft. Collins*, 927 F.2d 1156, 1160 (10th Cir. 1991) (citing *Burdine*, 450 U.S. at 258).

Here, Defendant reasons that it terminated Plaintiff's employment because Plaintiff improperly caused millions of dollars of accrued revenues and liabilities to be booked on the financial statements of SES Americas.  (Def.'s Br. at 16.)  More specifically, Defendant found that Plaintiff:

> exercised bad judgment in booking the [accounting] entries.  This bad judgment resulted in the misstatement of the financial results of the [SES] organization within [e]nterprise [s]ervices of [Defendant].  [Defendant] can find no adequate or acceptable reason that mitigates or explains away [Plaintiff's] actions.  These actions constitute gross misconduct and demonstrated behavior far below the level of performance, professionalism[,] and technical expertise required of a finance manager in [Plaintiff's] position.

(*Id.*, Ex. A–13 [1/29/02 Letter Re: Termination of Employment]; Pl.'s Resp., Ex. Y [1/29/02 Letter Re: Termination of Employment].)  Defendant has thus satisfied its burden to present clear and reasonably specific legitimate, nondiscriminatory reasons for its actions.  Accordingly, I progress to the third *McDonnell Douglas* stage, pretext.

### iii. Pretext

"An employee may demonstrate pretext by showing the employer's proffered reason was so inconsistent, implausible, incoherent, or contradictory that it is unworthy of belief." *Stover v. Martinez*, 382 F.3d 1064, 1071 (10th Cir. 2004).  This court's inquiry is not whether Defendant's reasons for discharging Plaintiff were "wise, fair or correct, " but whether Defendant "honestly believed those reasons and acted in good faith upon those beliefs." *Rivera v. City & County of Denver*, 365 F.3d 912, 925 (10th Cir. 2004) (citation and internal quotation marks omitted); *see also McKnight*, 149 F.3d at 1129 (holding that "[t]he test is [the] good faith belief" of the defendant in taking its actions, and "such belief would not be pretextual even if the belief was later found to be erroneous").  Accordingly, "[i]t is the perception of the decision maker [that] is relevant, not plaintiff's perception of [himself]." *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988) (citation omitted).

Rather than addressing each claim separately, Plaintiff proffers a blanket argument for pretext regarding all his claims.  (Pl.'s Resp. at 18–26.)  Plaintiff asserts that Defendant's legitimate, nondiscriminatory reasons for terminating his employment are pretextual for five reasons: (1) Defendant's explanations contradict Defendant's supervisory employees' testimony; (2) Defendant's opinion of Plaintiff's work performance changed suddenly after Defendant began to perceive him as having a disability and after he began his FMLA leave; (3) Defendant failed to

follow its own policies; (4) Defendant's management employees made statements supporting an inference that religion and disability were motivating factors in Defendant's decision to terminate Plaintiff's employment; and (5) other inconsistencies and implausibilities undermine Defendant's claim that it acted in good faith in terminating Plaintiff's employment. (*Id*. at 17–18.)  Plaintiff's second and fourth arguments are more appropriately discussed in connection with Plaintiff's claims evoking the statutes or statutory subjects mentioned therein.  Accordingly, in connection with his ADEA claim, I discuss Plaintiff's first, third, and fifth arguments.

### *(1)     Defendant's Explanations and Employees' Testimony*

Plaintiff argues that inconsistencies between Defendant's explanations for terminating Plaintiff's employment and Defendant's supervisory employees' testimony establish pretext.  (*Id*. at 18–21.)  In support of his argument, Plaintiff presents a bullet-point list of seven purportedly material inconsistencies.  (*Id.*)  I address each in turn.  First, Plaintiff argues that Defendant informed the EEOC that at the September 10, 2001 meeting, Denholm questioned "accounting irregularities" surrounding an approximated two million dollar debit balance, which is inconsistent with Denholm's testimony that she asked about the accruals at the meeting.  (*Id*. at 18, Ex. Z [11/11/02 EEOC Letter].)  Plaintiff's argument is beyond unavailing.  As Plaintiff admits, Jeffrey Powley, an employee of Defendant present at the September 10, 2001 meeting, testified that: (1) the approximated two million dollar debit balance arose out of the accrued liabilities in question, and (2) Denholm asked questions about the accruals.  (*Id*., Ex. G at 50–55. [Dep of Jeffrey Powley].)

Second, Plaintiff notes Defendant informed the EEOC that Plaintiff had made the accrual entries at issue with "little or no explanation or supporting documentation," which Plaintiff argues

is inconsistent with Denholm's testimony that she recalled seeing a spreadsheet as support of the accrued revenue entries.  (*Id.* at 18–19, Ex. Ex. Z [11/11/02 EEOC Letter].)  In analyzing pretext, "courts are not free to second-guess an employer's business judgment." *Branson*, 853 F.2d at 772.  Thus, whether Denholm considered the spreadsheet to be "little or no supporting documentation" is not a proper question for this court, and cannot serve to establish pretext.

Third, Plaintiff maintains Defendant claimed in its interrogatory responses that Plaintiff did not adequately explain his actions, which Plaintiff argues is inconsistent with Denholm's testimony that Plaintiff gave a detailed explanation for the accruals.  (Pl.'s Resp. at 19.)  As stated above, whether Defendant found Plaintiff's "detailed" explanation to be adequate is not a proper question for this court, and cannot serve to establish pretext. *Branson*, 853 F.2d at 772.

Fourth, Plaintiff notes Defendant claimed in its interrogatory responses that Plaintiff's actions amounted to gross misconduct, which Plaintiff contends is inconsistent with Denholm's testimony that she did not know how Plaintiff had arrived at the accrued amounts or whether Plantiff had relied on certain documentation.  (Pl.'s Resp. at 19.)  Independent of whether this issue actually amounts to an inconsistency, Plaintiff's argument does nothing to rebut Defendant's good-faith belief supporting its termination of Plaintiff's employment.  Indeed, Plaintiff concedes that: (1) based on the results of her own and Wear's investigation, Denholm concluded that Plaintiff's accruals were "inaccurate and unsupported" and Plaintiff had failed to carry out his job responsibilities properly; and (2) based on this conclusion, Denholm determined that Plaintiff's employment should be terminated.  (Def.'s Br., Statement of Undisputed Material Facts ¶¶ 38, 39; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶¶ 38, 39.)

-17-

Fifth, Plaintiff asserts Denholm testified, and Defendant claimed in its interrogatory responses and EEOC response, that Wear had conducted an "audit," which Plaintiff maintains is inconsistent with Wear's testimony that he conducted an "investigation." (Pl.'s Resp. at 19–20, Ex. C at 230 [Dep. of Robyn Denholm], Ex. Z at 2 [11/11/02 EEOC Letter].) This semantic distinction is irrelevant to this court's present inquiry. Whether the parties understood Wear's task to be an audit or an investigation simply does not serve to discredit Defendant's good-faith belief in support of the results of the audit/investigation.

Sixth, Plaintiff argues Defendant informed the EEOC that Plaintiff had purposefully misstated revenue and mismanaged Defendant's finance group, allegations which were lacking in Wear's e-mail summarizing his investigation results and notes summarizing his interview. (*Id.* at 20, Ex. T [2/27/02 E-mail], Ex. U [1/17/02 Wear Meeting Notes], Ex. Z [11/11/02 EEOC Letter].) Plaintiff's argument defies logic, cites neither legal authority nor precedent, and fails to rebut or discredit the results of Wear's and Denholm's investigations or Defendant's reliance thereupon in terminating Plaintiff's employment.

Seventh, and finally, Plaintiff notes Denholm found Plaintiff to have committed gross misconduct, which Plaintiff contends is inconsistent with Denholm's testimony that she had no reason to disbelieve Plaintiff's purported explanations for his actions other than: (1) Plaintiff's alleged failure to show Denholm certain supporting data, and (2) Denholm's differing opinion as to the necessity of recognizing an accrual. As above, what constitutes gross misconduct is a question of business judgment, which is beyond the purview of this court's task in analyzing pretext. *Branson*, 853 F.2d at 772. Accordingly, Plaintiff has failed to raise a genuine issue of fact as to pretext with his proposed contradictions.

-18-

### (2)      *Defendant's Alleged Failure to Follow Its Policies*

Plaintiff argues that Defendant failed to follow its own policies by terminating Plaintiff's employment without giving him an opportunity to improve his work, and by terminating Plaintiff's employment rather than reassigning or demoting him. (Pl.'s Resp. at 22–24.) Plaintiff's convoluted argument is difficult to untangle. Plaintiff proffers Defendant's corporate "gross misconduct policy" and asserts that Denholm felt Plaintiff was guilty of gross misconduct in connection with the accruals for three reasons listed on Defendant's policy: (1) falsifying or misrepresenting information on Defendant's records; (2) removing Defendant's property without proper authorization; and (3) any action that could harm or bring disrepute to Defendant. (*Id.* at 22, Ex. I [Gross Misconduct Policy].) Plaintiff asserts Denholm understood that except in the case of gross misconduct, an employee should be given an opportunity to improve his work performance before being discharged. (Pl.'s Resp. at 23; Def.'s Br., Ex. A–3 at 243–45 [Dep. of Robyn Denholm].) Plaintiff then asserts that during the process of booking the accruals at issue: (1) he had to follow complex rules based on two differing sets of numbers, the accuracy of which he was not certain; (2) he made a judgment call not to rely on certain analysis, because he believed the analysis was incomplete and inadequate; and (3) he was under extreme stress. (Pl.'s Resp. at 23.) Plaintiff's attempt to recharacterize his actions as something less than "gross misconduct" is irrelevant to the court's inquiry regarding pretext. *See Furr v. Seagate Tech., Inc.*, 82 F.3d 980, 988 (10th Cir. 1996) (holding employee's evaluation of his own performance irrelevant to court's analysis regarding pretext). Semantics and self-evaluation aside, Plaintiff fails to point to any evidence suggesting that Denholm did not rely in good faith on her own and Wear's findings that Plaintiff had improperly recorded accrued revenues and liabilities as a legitimate, nondiscriminatory

reason for terminating Plaintiff's employment. Indeed, Plaintiff expressly notes that Denholm

testified she believed that Plaintiff had "evidence to suggest that [the accruals] were incorrect."

(Pl.'s Resp. at 22; Def.'s Br., Ex. A–3 at 242–43 [Dep. of Robyn Denholm].)

Moreover, Defendant was not obligated to demote Plaintiff or follow the procedures

Plaintiff references. In Colorado, an employee who is hired for an indefinite period of time is

presumed to be an at-will employee whose employment may be terminated without cause or

notice. *Continental Airlines, Inc. v. Keenan*, 731 P.2d 708, 711 (Colo. 1987). Plaintiff offers no

argument characterizing his employment as anything other than at-will.[2] Thus, Plaintiff has not

raised a genuine issue of material fact regarding pretext in connection with his argument that

Defendant failed to follow its policies in discharging Plaintiff.

### *(3)    Alleged Inconsistencies and Defendant's Good-Faith Belief*

Plaintiff presents a second bullet-point list of seven purported inconsistencies and

implausibilities that he argues undermine Defendant's good-faith belief in its reasons for

terminating Plaintiff's employment. (Pl.'s Resp. at 24–26.) I address each point in turn. First,

Plaintiff argues that Defendant's selection of Brasier, rather than a senior member on Plaintiff's

staff, to fill in for Plaintiff during his leave undermines Defendant's good-faith belief. (*Id.* at 24.)

Plaintiff alleges an inconsistency exists, in that Denholm testified Osborne selected Brasier to fill in

for Plaintiff, but Osborne testified she did not select Brasier and did not know who made the

---

[2]Defendant's policy states in no uncertain terms, "[t]his policy does not affect
[Defendant's] right to terminate employees at will." (Pl.'s Resp. Ex. I [Gross Misconduct
Policy].)

selection.[3]  (Pl.'s Resp., Ex. C at 152–53 [Dep. of Robyn Denholm], Ex. F. at 135 [Dep. of Brenda Osborne].)  Even assuming an inconsistency exists, it is difficult to ascertain how it undermines or relates at all to Defendant's good-faith belief in Denholm's and Wear's findings that Plaintiff had improperly recorded accrued revenues and liabilities as a legitimate, nondiscriminatory reason for terminating Plaintiff's employment.

Second, Plaintiff points to this court's denial of summary judgment in another ongoing case, in which one of Defendant's employees alleges that Hampton discriminated against her on the basis of sex and religion by selecting Brasier for a certain position.[4]  (*Id.* at 24.)  It is a fundamental rule of black-letter law that evidence of prior or other "bad acts" is never admissible simply to establish a propensity to engage in similar acts.  Fed. R. Evid. 404(b) (2005).  Moreover, Plaintiff does not allege that: (1) Hampton was his supervisor, (2) Hampton was involved in Defendant's decision to terminate Plaintiff's employment, or (3) that Hampton was involved in selecting Brasier as Plaintiff's stand-in.  (Pl.'s Resp., *passim*.)  Thus, it is markedly difficult to ascertain how allegations in another lawsuit could possibly be relevant to the instant case.

Third, Plaintiff contends that Denholm and certain other of Defendant's employees did not determine the method Plaintiff used to arrive at certain amounts of accrued revenue and did not authenticate the figure Plaintiff calculated.  (Pl.'s Resp. at 25.)  Plaintiff offers no citation to the record for his contention that Denholm conducted no independent analysis of Plaintiff's

---

[3] Defendant contends that Osborne asked Brasier to fill in for Plaintiff through the close of the financial quarter, but Terry Erdle suggested Brasier be appointed to the official "Acting SES Americas Controller" position and Denholm approved Erdle's suggestion.  (Def.'s Reply at 29, Ex. A–3 at 152–53 [Dep. of Robyn Denholm], Ex. A–17 at 170–171 [Dep. of Robyn Denholm].)

[4] *Kitchen v. Sun Microsystems, Inc.*, Case No. 03–cv–00877–ZLW–MEH (filed May 14, 2003.)

calculations.[5]  A plaintiff cannot create a genuine issue of material fact with unsupported, conclusory allegations.  *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1237 (10th Cir. 2004).  Thus, Plaintiff's unsubstantiated, self-serving statement cannot serve to undermine Defendant's good-faith belief in and reliance upon Denholm's and Wear's findings that Plaintiff had improperly recorded accruals as a legitimate, nondiscriminatory reason for terminating Plaintiff's employment.

Fourth, Plaintiff argues, in essence, although Denholm felt Plaintiff should have performed analysis as to the accuracy of the data he received and relied on in calculating and booking the accruals in question, Plaintiff lacked the staff to do perform such a large-scale analysis.  (*Id.* at 25.) I do not deem this not to be an implausibility or inconsistency in the record, but an internal staffing issue at best.[6]  Plaintiff's argument simply does not call into question Defendant's good-faith belief in its legitimate, nondiscriminatory reasons for terminating Plaintiff's employment.

Fifth, Plaintiff argues that although at a meeting on February 11, 2002 with Denholm and Hampton, he offered an additional "explanation" regarding the accruals at issue, Denholm reaffirmed her decision to terminate Plaintiff.  (*Id.* at 25.)  Plaintiff offers neither argument nor citation to the record to specify what information the purported new "explanation" contained. (*Id.*)  Again, Plaintiff's unsubstantiated, self-serving statement cannot suffice to raise a genuine issue of material fact as to Defendant's good-faith belief in and reliance upon Denholm's and Wear's findings that Plaintiff had improperly recorded accruals as a legitimate, nondiscriminatory reason for terminating Plaintiff's employment.  *Annett*, 371 F.3d at 1237.

---

[5]Poignantly, in his fourth proposed inconsistency, Plaintiff asserts Denholm testified that a team performed a three-week analysis of the data Plaintiff used in calculating the accruals.  (Pl.'s Resp. at 25.)

[6]Plaintiff does not allege that he asked for a staffing increase.  (Pl.'s Resp., *passim*.)

Sixth, Plaintiff argues he learned in 2002 that Defendant did not discharge Hampton and two other employees for booking an accrued liability of approximately three million dollars without a sound basis. (*Id.* at 25–26.)  In support of his argument, Plaintiff cites his own affidavit in which he states that "[o]n January 4, 2000 [sic]," he learned of this alleged improper booking from an unnamed source, and he "informed the person who reported this information to [him] to document that occurrence along with that person's own version of those events." (*Id.*, Ex. A ¶ 20 [Aff. of Marian Barcikowski].)  Plaintiff's affidavit constitutes inadmissible hearsay as to this point.  *See* Fed. R. Evid. 802–804 (2005).  The court may consider only admissible evidence when ruling on a summary judgment motion.  *See World of Sleep.*, 756 F.2d at 1474.  Plaintiff cannot rely on inadmissible hearsay to create an genuine issue of fact as to whether Defendant held a good-faith belief in its legitimate, nondiscriminatory reason for terminating him.

Seventh, Plaintiff argues that "someone" authorized another employee to move into Plaintiff's former office and remove Plaintiff's property and company-related materials from that office before January 2, 2002. (Pl.'s Resp. at 25.)  In support of this contention, Plaintiff cites to a paragraph of his own affidavit, in which he discusses not the alleged usurpation of his office, but a report Denholm prepared regarding revenue accruals. (*Id.*, Ex. A ¶ 39 [Aff. of Marian Barcikowski].)  Equally notably, Plaintiff cites no legal authority for the proposition that he is legally entitled to a particular office upon return from leave. (*Id.* at 25–26.)  It is not this court's task to comb through Plaintiff's voluminous submissions in an effort to link alleged facts to his arguments or to construct Plaintiff's arguments for him, and I decline to do so at this juncture. Thus, Plaintiff has not raised a genuine issue of fact as to pretext with his seven alleged implausibilities and inconsistencies.  None of Plaintiff's arguments raises an genuine issue of fact to

discredit Defendant's good-faith belief supporting its legitimate, nondiscriminatory reason for

terminating Plaintiff's employment — that Plaintiff improperly reported millions of dollars in

accrued revenues and liabilities.  Accordingly, Defendant is entitled to summary judgment on

Plaintiff's first claim for age discrimination under the ADEA.

### b.    *Plaintiff's Second Claim: Religious Discrimination Under Title VII*

Defendant maintains that it is entitled to summary judgment on Plaintiff's claim for

religious discrimination under Title VII.  (Def.'s Br. at 16–19.)  Title VII provides that it is an

"unlawful employment practice for an employer . . . to discriminate against any individual . . .

because of such individual's race, color, religion, sex, or national origin."  42 U.S.C.A. §

2000e–2(a) (2005).  "Under Title VII, an employer is required reasonably to accommodate an

employee's religious practices or beliefs where accommodation does not cause undue hardship to

the company's business interests."  *Toledo v. Nobel-Sysco, Inc.*, 892 F.2d 1481, 1486 (10th Cir.

1989).  Consequently, the Tenth Circuit has found religious discrimination "where an employer

was unwilling to accommodate religious practices and beliefs."  *Shapolia v. Los Alamos Nat'l*

*Lab.*, 992 F.2d 1033, 1037 (10th Cir. 1993).  Here, Plaintiff alleges that Defendant discriminated

against him because of his religion when it terminated his employment, not because Defendant was

unwilling to accommodate Plaintiff's religious practices or to make an exception to a job

requirement because of Plaintiff's religious beliefs, but simply because Plaintiff was not of the

Mormon faith.  (Compl. ¶ 23.)  Defendant argues that Plaintiff cannot maintain his claim because

he cannot establish that Defendant's legitimate, nondiscriminatory reason for discharging Plaintiff

was pretextual.  (Def.'s Br. at 16–19.)  The *McDonnell Douglas* framework applies to Plaintiff's

claims under the Title VII.  *See Garrett*, 305 F.3d at 1216.

-24-

In order to establish a *prima facie* case, Plaintiff must establish that: (1) he is a member of a protected class; (2) he was qualified to perform his job; (3) despite his qualifications, he was discharged; and (4) the job from which he was terminated was not eliminated. *Perry v. Woodward*, 199 F.3d 1126, 1140 (10th Cir. 1999); *cf. Shapolia*, 992 F.2d at 1038 (promulgating alternate *prima facie* requirements where Plaintiff asserts that he was discriminated against for being of a different religion than his supervisors). Here, because Defendant does not argue to the contrary and this issue can be resolved at subsequent *McDonnell Douglas* stages, I assume, *arguendo*, that Plaintiff can establish a *prima facie* case. Thus, the burden shifts to Defendant. *McDonnell Douglas*, 411 U.S. at 804–05. Defendant argues that its legitimate, nondiscriminatory reason for terminating Plaintiff's employment is Plaintiff's improper reporting of millions of dollars in accrued revenues and liabilities. (Def.'s Br. at 16.) As discussed *supra* at *Analysis* § 2aii, Defendant's reason is sufficient to satisfy its burden at this stage. Consequently, the burden shifts back to Plaintiff to establish Defendant's reasons as pretextual. *Stover*, 382 F.3d at 1071.

The same analysis regarding Plaintiff's attempts to establish pretext outlined *supra* at *Analysis* § 2aiii applies here. In addition, I address Plaintiff's fourth argument in support of pretext — that certain of Defendant's management employees made statements supporting an inference that religion was a motivating factor in Defendant's decision to terminate Plaintiff's employment. (Pl.'s Resp. at 24.) Plaintiff's sole allegation in support of his argument is that Hampton told him "we Mormons" would "take care of" another of Defendant's employees, who allegedly had been pressuring Plaintiff to forecast more revenue, because "we [Mormons] know how to" do so. (*Id.*) In a misguided attempt to substantiate his contention, Plaintiff relies on a

section of his affidavit recounting his recollection of Hampton's alleged comments.[7]   (Pl.'s Resp.,

Ex. A ¶ 35 [Aff. of Marian Barcikowski].)   Plaintiff's affidavit provides only inadmissable hearsay

evidence to support his argument.   *See* Fed. R. Evid. 802–804 (2005).   This court may only

consider admissible evidence when ruling on a summary judgment motion.   *See World of Sleep.*,

756 F.2d at 1474.   Even if the statements were admissible, Plaintiff does not allege — and the

evidence does not support — that Osborne, Denholm, any of Plaintiff's supervisors, or anyone

involved in terminating Plaintiff's employment made the statements.   Thus, Hampton's alleged

statements neither can nor could serve to undermine Defendant's good-faith belief in Denholm's

and Wear's findings that Plaintiff had improperly recorded accrued revenues and liabilities as a

legitimate, nondiscriminatory reason for terminating Plaintiff's employment.   Consequently,

Plaintiff has failed to raise a genuine issue of material fact as to pretext, and Defendant is entitled

to summary judgment on Plaintiff's second claim for religious discrimination under Title VII.

 **c.**  ***Plaintiff's Third Claim: Disability Discrimination Under the ADA***

   Defendant argues that it is entitled to summary judgment on Plaintiff's claim for disability

discrimination.   (Def.'s Br. at 13–15.)   Under the ADA, an employer may not discriminate against

a qualified disabled employee "'in regard to job application procedures, the hiring, advancement, or

discharge of employees, employee compensation, job training, and other terms, conditions, and

privileges of employment'" because of the employee's disability.   *Doebele v. Sprint/United Mgmt.*

---

   [7]Plaintiff cites to a paragraph of his own affidavit in which he describes his surprise at learning that Brasier would fill in for him during his leave, rather than Hampton's alleged statements.   (*Id.*, Ex. A ¶ 34 [Aff. of Marian Barcikowski].)   I note that Plaintiff's recollection of Hampton's alleged comments appears in the following paragraph and underscore that this court is not tasked with correcting Plaintiff's proofreading errors. (Pl.'s Resp., Ex. A ¶ 35 [Aff. of Marian Barcikowski]).

*Co.*, 342 F.3d 1117, 1128 (10th Cir. 2003) (quoting 42 U.S.C. § 12112).  Plaintiff alleges that Defendant discriminated against him on the basis of a perceived disability by terminating his employment.  (Compl. ¶ 27; Pl.'s Resp. at 12–14.)  Defendant argues that Plaintiff cannot establish a *prima facie* case for disability discrimination because Plaintiff cannot establish that he is disabled within the meaning of the ADA.  (Def.'s Br. at 13–15.)  The *McDonnell Douglas* framework described above applies to Plaintiff's claims under the ADA.  *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1189 (10th Cir. 2003).

To establish a *prima facie* case under the ADA, Plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) he is qualified, meaning he is able to perform the essential functions of the job, with or without reasonable accommodation, which he must describe; and (3) Defendant took an adverse employment action against him because of his disability.  *White v. York Int'l Corp.*, 45 F.3d 357, 360–61 (10th Cir. 1995).  I need address only address the first requirement.

Under ADA standards, a disability is "'(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment.'"  *Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 361 (2001) quoting 42 U.S.C. § 12102[2]).  Here, Plaintiff alleges that Defendant regarded him disabled, thus I only address the third disability definition.  (Pl.'s Resp. at 12–13.)  In order to satisfy the third definition, Plaintiff must establish that Defendant perceived Plaintiff as disabled within the meaning of the ADA.  *See McGeshick v. Principi*, 357 F.3d 1146, 1151 (10th Cir. 2004).  Plaintiff may satisfy this requirement by establishing either: (1) Defendant mistakenly believed that Plaintiff had a physical impairment that substantially limited one

or more major life activities, or (2) Defendant mistakenly believed that Plaintiff's actual, non-limiting impairment substantially limited one or more major life activities. *Sutton v. United Air Lines*, 527 U.S. 471, 489–90 (1999) (citing 42 U.S.C. 42 U.S.C. § 12101[7]). In short, Plaintiff must establish that Defendant entertained misconceptions about Plaintiff's abilities, either as to whether Plaintiff has an impairment, or as to the limiting nature of an impairment Plaintiff has. *Id.* Plaintiff must also establish that Defendant's misconceptions were "based on myth, fear, or stereotype, including concerns regarding safety, insurance, liability, and acceptance by coworkers and the public." *McKenzie v. Dovala*, 242 F.3d 967, 971 (10th Cir. 2001) (citation and internal quotation marks omitted).

Plaintiff argues that Defendant's management employees, including Plaintiff's supervisor, regarded him as having a mental impairment that substantially limited his major life activity of the ability to perform a broad class of jobs.[8] (Pl.'s Resp. at 12–13.) The parties do not contest that on September 25, 2001, Plaintiff received a diagnosis and treatment for stress and anxiety. (Def.'s Br., Statement of Undisputed Material Facts ¶ 16; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 16.) In support of his claim, Plaintiff relies heavily upon *Doebele*, 342 F.3d 1117. In *Doebele*, the Tenth Circuit found a genuine issue of material fact existed as to whether Plaintiff was regarded as disabled where, in part, Plaintiff's employers expressed belief that Plaintiff posed a physical threat to coworkers. *Doebele*, 342 F.3d at 1134. Here, Plaintiff

---

[8]Courts have been hesitant to define working as a major life activity. The Supreme Court has held that "even assuming working is a major life activity, a claimant would be required to show an inability to work in a 'broad range of jobs,' rather than a specific job." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 200 (2002) (citing *Sutton v. United Air Lines*, 527 U.S. 471, 492 [1999].) Plaintiff specifically contends that Defendant regarded him as unable to perform a broad class of jobs, thus I focus on the mental impairment and limitation issues.

purports to offer statements by Defendant's employees that Plaintiff was incompetent or dangerous, including: (1) the wholly unsubstantiated claim that an employee informed him that Osborne had said Plaintiff was mentally incompetent and shouldn't be asked "to do anything;" and (2) Plaintiff's inadmissible hearsay recollection of a co-worker's statement that "someone should call security" because Plaintiff was "crazy." (Pl.'s Resp. at 13, Statement of Disputed Material Facts ¶¶ 12, 13, Ex. A ¶ 41 [Aff. of Marian Barcikowski].) The court may consider only admissible evidence when ruling on a summary judgment motion. *See* Fed. R. Evid. 802–804; *World of Sleep*, 756 F.2d at 1474. Further, conclusory allegations are insufficient to create a genuine issue of fact. *Annett*, 371 F.3d at 1237. Plaintiff simply cannot use unsubstantiated, inadmissable hearsay evidence to create a genuine issue of fact as to whether Defendant perceived him to be disabled.

Additionally, Plaintiff proposes to establish that Defendant believed he posed a physical threat to other employees through Osborne's statements to Wear that Plaintiff seemed possibly suicidal and had "talked about guns." (Pl.'s Resp. at 13, Ex. F at 165 [Dep. of Brenda Osborne]; Ex. U [1/17/02 Wear Meeting Notes].) Even assuming these statements were admissible, Plaintiff's own proffered support for his argument states "[Plaintiff] had made non threatening references to guns and suicide." (*Id.*, Ex. U [1/17/02 Wear Meeting Notes].) Consequently, Plaintiff has failed to raise a genuine issue of material fact as to whether Defendant regarded him as disabled. Plaintiff has failed to raise a genuine issue of material fact with respect to his *prima facie* case for disability discrimination, and thus I need not discuss the subsequent *McDonnell Douglas* stages. Defendant is entitled to summary judgment with respect to Plaintiff's third claim for disability discrimination under the ADA.

**d.      *Plaintiff's Fourth Claim: Entitlement and Retaliation Under the FMLA***

Defendant asserts that it is entitled to summary judgment on Plaintiff's claims under the

FMLA. (Def.'s Br. at 15–16.)  The FMLA requires employers to provide their employees with up

to twelve weeks of unpaid leave in the event the employee has a serious medical condition.  29

U.S.C.A. § 2612(a)(1)(D) (2005).   Courts construing the FMLA have recognized two theories of

recovery — the entitlement or interference theory and the retaliation or discrimination theory.  *See*

*Smith v. Diffee Ford-Lincoln-Mercury, Inc*., 298 F.3d 955, 960–61 (10th Cir. 2002); *Gunnell v.*

*Utah Valley State Coll.*, 152 F.3d 1253, 1261–62 (10th Cir. 1998).   The entitlement or inference

theory arises under section 2615(a)(1), and provides that an employee may bring a claim against

his employer for interference with or refusal to provide him with a benefit to which he was entitled

under the FMLA, such as reinstatement to his former position or an equivalent position upon his

return from FMLA leave.  *Smith*, 298 F.3d at 960–61.  The retaliation or discrimination theory

arises under section 2615(a)(2), which provides that an employee can bring a claim that his

employer discriminated or retaliated against him because he took FMLA leave.  *Id.*   In the instant

case, Plaintiff asserts claims against Defendant under both section 2615(a)(1) and section

2615(a)(2).   I address Plaintiff's claims separately, as the legal framework required for their

analysis differs.

**i.      *Plaintiff's Section 2615(a)(1) Claim***

The reinstatement requirement under the FMLA is a substantive statutory right

guaranteed to Plaintiff.  *Smith*, 298 F.3d at 960 (citing *King v. Preferred Tech. Group*, 166 F.3d

887, 891 [7th Cir. 1999]).   For claims brought under section 2615(a)(1), the employer's intent in

denying the employee a substantive FMLA right is immaterial.  *Id.*; *see also Hodgens v. General*

*Dynamics Corp.*, 144 F.3d 151, 159 (1st Cir. 1998) ("Because the issue is the right to an entitlement, the employee is due the benefit if the statutory requirements are satisfied, regardless of the intent of the employer."); *Cross v. Southwest Rec. Indus.*, 17 F. Supp. 2d 1362, 1368 (D. Ga. 1998) ("The FMLA thus imposes strict liability upon employers who deny a FMLA entitlement to a qualified employee."). The *McDonnell Douglas* framework does not apply to section 2615(a)(1) claims. *Smith*, 298 F.3d at 963. Accordingly, Plaintiff need only demonstrate by a preponderance of the evidence his entitlement to reinstatement in order to establish his claim against Defendant for deprivation of this right. *Smith*, 298 F.3d at 960 (citing *King*, 166 F.3d at 891). Although the FMLA provides an employee with a right to reinstatement to his or her pre-leave position or a position equivalent thereto, this right is not absolute. Specifically, the Tenth Circuit has held that "'[u]nder [the] FMLA, an employee who requests [FMLA] leave or is on [FMLA] leave has no greater rights than an employee who remains at work.'" *Smith*, 298 F.3d at 960 (citing *Gunnell*, 152 F.3d at 1262); *see* 29 C.F.R. § 825.216(a) (2005).

Here, Plaintiff alleges that Defendant violated 29 U.S.C. § 2615(a)(1) by refusing to reinstate Plaintiff to his former position as SES Americas Controller or an equivalent position upon his return from FMLA leave as required by 29 U.S.C. § 2614(a). (Compl. ¶ 31; Pl.'s Resp. at 14–16.) Defendant does not address Plaintiff's claim for reinstatement directly, but asserts that before Plaintiff took FMLA leave, it: (1) commenced investigation into Plaintiff's overstatement of revenues; and (2) discovered that Plaintiff had booked millions of dollars in accrued revenues and liabilities without proper substantiation. (Def.'s Br. at 15–16.) Further, in its response to Plaintiff's charge of discrimination filed with the EEOC, Defendant noted that upon Plaintiff's return from FMLA leave, it placed Plaintiff on paid administrative leave pending the outcome of

the ongoing internal investigation regarding his revenue calculations. (Pl.'s Resp., Ex. Z [11/11/02 Letter to EEOC].)

Here, neither party offers any information as to the nature or status of administrative leave under Defendant's policies. To wit, the parties do not specify Plaintiff's salary, benefits, or rights while on administrative leave as compared to under active employment under Defendant.[9] Accordingly, I find that a genuine question of fact exists as to whether Defendant's placement of Plaintiff on paid administrative leave upon his return is tantamount to reinstatement into his position prior to his FMLA leave. Consequently, Defendant is not entitled to summary judgment on Plaintiff's fourth claim for FMLA entitlement under 29 U.S.C. § 2615(a)(1)

### ii.     Plaintiff's Section 2615(a)(2) Claim

Along with creating substantive rights, the FMLA also protects employees against discrimination and retaliation for exercising their rights under the statute. *See* 29 U.S.C.A. § 2615(a)(2) (2005). Unlike claims brought under section 2615(a)(1), the employer's intent is a relevant consideration in claims brought under 2615(a)(2). *King*, 166 F.3d at 891 ("The issue becomes whether the employer's actions were motivated by an impermissible retaliatory or discriminatory animus."); *Hodgens*, 144 F.3d at 160 ("In such a case, the employer's motive is relevant, and the issue is whether the employer took the adverse action because of a prohibited reason or for a legitimate nondiscriminatory reason."). Given that an employer's intent is central to section 2615(a)(2) claims, federal courts employ the above-described *McDonnell Douglas*

---

[9]Defendant flatly does not address Plaintiff's claim for entitlement or Plaintiff's employment status upon return from FMLA leave in its submissions. Plaintiff states only that on January 3, 2002, he "was told not to return to work until further notice." (Pl.'s Resp., Ex. A ¶ 42 [Aff. of Marian Barcikowski].)

framework to claims for FMLA-based retaliation.  *See Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323

(10th Cir. 1997).  Here, Plaintiff alleges that Defendant violated 29 U.S.C. 2615(a)(2) when it

retaliated against Plaintiff for taking FMLA leave by terminating his employment.  (Compl. ¶ 31;

Pl.'s Resp. at 14–16.)  Defendant argues that Plaintiff cannot maintain his claim for retaliation

because he cannot satisfy the causation requirement necessary to establish a *prima facie* case.

(Def.'s Br. at 16.)

### *(1)       Prima Facie Case*

To establish a *prima facie* case for retaliation under the FMLA, Plaintiff must show that:

(1) he availed himself of a protected right under the FMLA; (2) Defendant took an adverse

employment action against him; and (3) a causal connection exists between these two actions.

*Morgan*, 108 F.3d at 1325.  The parties do not dispute the first two prongs, namely that: (1)

Plaintiff took FMLA leave from September 25, 2001 through January 2, 2002; and (2) on January

29, 2002 Defendant notified Plaintiff that it would terminate his employment, effective February

12, 2002.  (Def.'s Br., Statement of Undisputed Material Facts ¶¶ 17, 38; *admitted at* Pl.'s Resp.,

Resp. to Statement of Undisputed Material Facts ¶¶ 17, 38.)  A plaintiff may establish a causal

connection "by evidence of circumstances that justify an inference of retaliatory motive, such as

protected conduct closely followed by adverse action."  *Burrus v. United Tel. Co. of Kan., Inc.*,

683 F.2d 339, 343 (10th Cir. 1982).  "Unless there is very close temporal proximity between the

protected activity and the retaliatory conduct, the plaintiff must offer additional evidence to

establish causation."  *O'Neal*, 237 F.3d at 1253 (citing *Conner v. Schnuck Mkts., Inc.*, 121 F.3d

1390, 1395 [10th Cir. 1997]).  More specifically, the Tenth Circuit has found that a "six-week

period between protected activity and adverse action may be sufficient, standing alone, to show

causation, but a three-month period, standing alone, is insufficient." *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1231 (10th Cir. 2004); *see Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999). Here, the approximate one-month time lapse between Plaintiff's return from FMLA leave and termination supports a finding of causation. Plaintiff has satisfied his burden to establish a *prima facie* case, hence I progress to the subsequent *McDonnell Douglas* stages.

### (2)    *Legitimate Nondiscriminatory Reason*

Defendant asserts that it terminated Plaintiff's employment because Plaintiff improperly caused millions of dollars of accrued revenues and liabilities to be booked on the financial statements of SES Americas. (Def.'s Br. at 16.) Thus, as above, Defendant has satisfied its burden to articulate clear and reasonably specific legitimate, nondiscriminatory reasons for its actions.

### (3)    *Pretext*

The same analysis regarding Plaintiff's attempts to establish pretext outlined *supra* at *Analysis* § 2aiii applies here. Additionally, I address Plaintiff's second argument in support of pretext — that Defendant's view of Plaintiff's work performance changed suddenly after he began his FMLA leave. (Pl.'s Resp. at 21–22.) Plaintiff argues that: (1) he received positive performance reviews in 1998 and 1999; (2) he received a promotion in May 2001; (3) he made the accounting entries at issue in this case in July 2001; and (4) although the accounting entries were accessible by Plaintiff's supervisors beginning in July 2001, criticism of the entries began after he took FMLA leave. (*Id.* at 21, Ex. N [1998 Performance Review], Ex. O [1999 Performance Review].) Plaintiff's argument is wholly unavailing.

To the extent Plaintiff attempts to argue that he was a good employee, I note Plaintiff's evaluation of his own performance is not relevant to this court's analysis regarding pretext. *Furr*, 82 F.3d at 988.  Moreover, it is illogical that performance reviews, which Plaintiff admits predate the accounting entries at issue, could be relevant to this court's consideration of Defendant's good-faith reasoning after Plaintiff made the entries.  Additionally, the fact that the parties do not contest that Denholm reviewed the balance sheets reflecting the entries at issue on September 10, 2001 supports Defendant's position.  (Def.'s Br., Statement of Undisputed Material Facts ¶ 9, 10; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶¶ 9, 10.)  It is difficult to ascertain how Defendant's failure to voice criticism regarding the entries at issue in the two weeks between the review of the entries and the beginning of Plaintiff's FMLA leave could serve to discredit Defendant's good-faith belief in Denholm's and Wear's investigations and the results thereof.  Plaintiff has failed to raise a genuine issue of material fact as to whether Defendant's articulated legitimate, nondiscriminatory reason for discharging Plaintiff was a pretext for  illegal retaliation under the FMLA.  Accordingly, I conclude that Defendant is entitled to summary judgment on Plaintiff's fourth claim for FMLA retaliation under 29 U.S.C. § 2615(a)(2).

**3.    *Conclusions***

Based on the foregoing it is therefore ORDERED as follows:

1.    Defendant's motion for summary judgment (# 44) is GRANTED in part and DENIED in part.  Defendant's motion is GRANTED as to Plaintiff's first, second, and third claims for discrimination under the ADEA, Title VII, and the ADA.  As to Plaintiff's fourth claim for entitlement and retaliation under the FMLA, Defendant's motion is GRANTED as to retaliation and DENIED as to entitlement.

2.      The court will hold a Final Pretrial Conference commencing at 10:45 o'clock a.m.

on Friday, **March 10, 2006**, in Courtroom A1001 of the Alfred A. Arraj United States

Courthouse, 901 19th Street, Denver, Colorado.  In preparing for and participating in the

conference, the parties and counsel will (1) follow the Instructions for Preparation and Submission

of Final Pretrial Order, a copy of which can be downloaded from the court's web site, specifically

http://www.cod.uscourts.gov/forms/ewn_fin_pre_ord_ins.pdf and (2) utilize the specific template

located at http://www.cod.uscourts.gov/forms/ewn_fin_pre_ord.wpd  These specific web

addresses should be used to insure that the proper format is observed.

Dated this 23rd day of February, 2006.

BY THE COURT:

s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
United States District Judge